**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| UNM Rainforest Innovations,<br><br>    **Plaintiff,**<br><br>v.<br><br>NXP Semiconductors N.V., NXP B.V., and NXP USA, Inc.<br><br>    **Defendants.** | **CIVIL ACTION NO. 7:26-cv-00058**<br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**
**PATENT INFRINGEMENT AND JURY DEMAND**

Plaintiff UNM Rainforest Innovations files this Original Complaint for Patent Infringement against Defendants NXP Semiconductors N.V., NXP B.V. and NXP USA, Inc. (together, "Defendants"). Plaintiff alleges infringement of US Patent Nos.: 8,799,620; 9,158,703; 9,934,155; 9,244,855; 10,445,244; 9,164,916; and 11,074,191 (together, the "Asserted Patents") as follows.

### I. PARTIES

1.  Plaintiff UNM Rainforest Innovations ("UNMRI") is a New Mexico nonprofit research park corporation formed, owned, and controlled entirely by the Board of Regents of the University of New Mexico ("UNM").

2.  UNM is a public educational institution based in Albuquerque, New Mexico and serves as the State of New Mexico's flagship research institution. UNM serves approximately 28,000 students and comprises over 3,300 faculty members across its main campus in Albuquerque and branch campuses in Gallup, Los Alamos, Rio Rancho, Taos, and Los Lunas, New Mexico.

3.   Over the past 30 years, UNM researchers have disclosed over 2,700 new inventions resulting in the issuance of over 980 United States patents.

4.   UNMRI's mission includes nurturing inventions researched and developed at UNM, promoting technological collaboration between UNM and other universities and research institutes, and thereby catalyzing economic development in the State of New Mexico.

5.   UNMRI furthers its mission by licensing and, if necessary, enforcing its inventions, forming and supporting companies to commercialize UNM-developed technologies, and reinvesting proceeds into continued research and development at and technological collaboration with UNM, for the benefit of and for the State of New Mexico and the United States.

6.   UNMRI is located at the UNM Lobo Rainforest Building, 101 Broadway Boulevard NE, Suite 1100, Albuquerque, New Mexico 87102.

7.   Plaintiff UNMRI, UNM, and the Board of Regents of UNM are arms of the State of New Mexico and enjoy sovereign immunity under common law, statutes, and constitutions of the United States and the State of New Mexico including, but not limited to, the Eleventh Amendment of the United States Constitution and Article 12 of the New Mexico Constitution. *See Regents of University of New Mexico v. Knight,* 321 F.3d 1111 (Fed. Cir. 2003); *STC. UNM v. Quest Diagnostics Inc.,* CIV 17-1123 MV/KBM, 2019 WL 1091390, at *1 (D.N.M. Mar. 8, 2019).

8.   By filing this lawsuit or prosecuting this action, Plaintiff UNMRI does not waive, either expressly or implicitly, its sovereign immunity, the sovereign immunity of UNM or its Board of Regents, or the sovereign immunity enjoyed by any arm of the State of New Mexico under the laws of the United States or the State of New Mexico, to any *inter partes* review, *ex parte* reexamination, or other post-grant proceeding at the United States Patent and Trademark Office or its Patent Trial and Appeal Board,

to any other administrative actions or proceedings whatsoever, to any noncompulsory counterclaims, or to any other federal or state proceedings whatsoever, whether initiated by Defendants or an entity other than Defendants.

9. Defendants NXP Semiconductors N.V. and NXP B.V. are corporations organized and existing under the laws of the Netherlands, having their principal place of business at High Tech Campus 60, Eindhoven, Netherlands.

10. Defendant NXP USA, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 6501 W. William Cannon Dr., Austin, TX 78735.

## II. JURISDICTION

11. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, et seq., including 35 U.S.C. §§ 271. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1338.

12. This United States District Court for the Western District of Texas has general and specific personal jurisdiction over NXP Semiconductors N.V. and NXP B.V. because the Court has personal jurisdiction under F.R.C.P. Rule 4(k)(2) over a foreign patent infringer even if infringing activities were not covered under the Texas long-arm statute. These claims arise under federal law. On information and belief, NXP Semiconductors N.V. and NXP B.V. are not subject to the jurisdiction of the courts of general jurisdiction of any state. Exercising jurisdiction under Rule 4(k)(2) is consistent with the Constitution and laws of the United States because these Defendants have purposefully directed substantial activities at, and maintain extensive contacts with, the United States as a whole, including the importation, marketing, and sale of the Accused Products nationwide.

13. This United States District Court for the Western District of Texas has general and specific personal jurisdiction over NXP USA, Inc. ("NXP USA") because NXP USA's headquarters are in Austin, Texas, and it transacts and conducts business in and with residents of this District and the State of Texas. Moreover, UNMRI's causes of action arise, at least in part, from the NXP Defendants' contacts with and activities in this District and the State of Texas.

14. On information and belief, Defendants have committed acts of infringement of the Asserted Patents within this District and the State of Texas, including the make, use, importation, distribution and sale of infringing instrumentalities, as detailed below.

### III. VENUE

15. Venue is proper for NXP Semiconductors N.V. and NXP B.V. in this District because venue in a patent infringement action against a foreign defendant is proper in any judicial district. 28 U.S.C. § 1391(c)(3); *Brunette Mach. Works, Ltd. v. Kochum Indus., Inc.,* 406 U.S. 706, 711-714 (1972), cited by *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520 n.2 (2017).

16. Venue is proper for NXP USA in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because the Defendant maintains one or more regular and established places of business in this District. NXP USA's corporate headquarters are in this District, as well as several design and manufacturing facilities, including two of the four NXP wafer fabrication facilities in the USA.[1] NXP USA has committed acts of infringement within this District giving rise to this action.

17. UNMRI does not waive its sovereign immunity as to any venue, including district courts and administrative tribunals, other than, solely for the purpose of the claims raised in this complaint and to no other extent, this Court, namely the United States District Court for the Western District of Texas.

---

[1] See, e.g., https://www.nxp.com/company/about-nxp/worldwide-locations/united-states:USA#location

# I.    OVERVIEW OF THE ASSERTED PATENTS

## a.    US PATENT NO. 8,799,620

18. US Patent No. 8,799,620 ('620 Patent) was invented by Ohad Falik, Ben-Zion Friedman, Jack Doweck, Eliezer Weissmann, and James B. Crossland. It was filed on June 1, 2007, and issued on August 5, 2014. The '620 Patent's original patentee was Intel Corp., who acquired exclusive ownership of the patent by written assignments from the inventors, recorded in the USPTO on or about May 5, 2010. Thereafter, Intel Corp. conveyed to UNMRI all rights, title, and interest in and to the patent, including the right to sue and recover for past infringements, by written assignment recorded in the USPTO on or about June 17, 2022.

19. The claimed invention of this patent provides systems, methods, and instructions for translating a linear (virtual) address to a physical address while returning associated page attributes. An instruction accepts a linear address and returns the physical address along with attributes such as access rights, presence, caching policy, dirty/accessed bits, page size, and fault status, using a Translation Lookaside Buffer ("TLB") and/or page table information without reading the underlying data.

20. The claimed invention accelerates processor memory operations by providing more efficient memory translation that reports memory attributes in both native and virtualized environments, while not incurring the processing time and energy expense of accessing the underlying data. This enables operating-system kernels and hypervisors to determine mappings, enforce protections, and diagnose faults without incurring full data accesses, improving performance, security checks, and virtualization support.

21. Defendants are not licensed to this patent, either expressly or implicitly. Plaintiff has complied with the requirements of 35 U.S.C. § 287 in respect of this patent.

**b. US PATENT NO. 9,158,703**

22. US Patent No. 9,158,703 ('703 Patent) was invented by Ohad Falik, Ben-Zion Friedman, Jack Doweck, Eliezer Weissmann, and James B. Crossland. It was filed on June 23, 2014, and issued on October 13, 2015. The '703 Patent's original patentee was Intel Corp. Intel Corp. conveyed to UNMRI all rights, title, and interest in and to the patent, including the right to sue and recover for past infringements, by written assignment recorded in the USPTO on or about June 17, 2022.

23. The '703 Patent advances a linear-to-physical address translation instruction framework that returns both addresses and page attributes. It enhances efficient kernel-level use of processor memory address translation, as it claims address-translation instructions that can return attributes and indicate page-walk faults without triggering exceptions, facilitating robust memory-management decisions. Virtualization support includes handling guest context, extended page tables, and asynchronous calls with appropriate context tagging. The claimed invention streamlines enforcement of memory protection, caching policies, and page-size handling during translation-sensitive operations, thereby improving microprocessor performance and energy efficiency.

24. Defendants are not licensed to this patent, either expressly or implicitly. Plaintiff has complied with the requirements of 35 U.S.C. § 287 in respect of this patent.

**c. US PATENT NO. 9,164,916**

25. US Patent No. 9,164,916 ('916 Patent) was invented by Ohad Falik, Ben-Zion Friedman, Jacob Doweck, Eliezer Weissmann, and James B. Crossland. It was filed on August 8, 2014, and issued on October 20, 2015. The '916 Patent's original patentee was Intel Corp. Intel Corp. conveyed to UNMRI all rights, title, and interest in and to the patent, including the right to sue and recover for past infringements, by written assignment recorded in the USPTO on or about June 17, 2022.

26. This patent covers processor features to execute a privileged instruction that translates a virtual address to a physical address and stores both the address and selected attributes in a physical address return register. The claimed invention reduces overhead for kernel/hypervisor translation and supports attribute-aware translation "as if write" to test permissions and virtualization contexts. By caching translations and attributes, the design improves processor performance for memory management, protection enforcement, and fault diagnosis across guest/host boundaries.

27. Defendants are not licensed to this patent, either expressly or implicitly. Plaintiff has complied with the requirements of 35 U.S.C. § 287 in respect of this patent.

### d. US PATENT NO. 9,244,855

28. US Patent No. 9,244,855 ('855 Patent), invented by Edward Grochowski, Julio Gago, Roger Gramunt, Roger Espasa, and Rolf Kassa, was filed by Intel Corp. on December 31, 2007, and issued on January 26, 2016. Intel Corp. conveyed to UNMRI all rights, title, and interest in and to the patent, including the right to sue and recover for past infringements, by written assignment recorded in the USPTO on or about June 17, 2022.

29. This patent introduces improvements in microprocessors' handling of virtual-memory addresses, which are organized in pages. It claims page-sizing extension techniques that allow multiple smaller, aligned pages to be treated as a single larger page without wholesale architectural changes. This enables an operating system to initialize a fixed number of page-table entries for smaller pages, align them, and set a designated bit or flag to indicate that the group should be handled as one combined larger page. The claimed invention reduces address-translation overhead while maintaining compatibility with existing paging hierarchies, including in memory initialization, operation, and deallocation steps, thereby enabling dynamic use of larger pages based on workload needs and resulting in improved processor performance.

7

30. Defendants are not licensed to this patent, either expressly or implicitly. Plaintiff has complied with the requirements of 35 U.S.C. § 287 in respect of this patent.

### e.   US PATENT NO. 9,934,155

31. US Patent No. 9,934,155 ('155 Patent) was invented by Edward Grochowski, Julio Gago, Roger Gramunt, Roger Espasa, and Rolf Kassa. It was filed by Intel Corp. on December 20, 2012, and issued on April 3, 2018. Intel Corp. conveyed to UNMRI all rights, title, and interest in and to the patent, including the right to sue and recover for past infringements, by written assignment recorded in the USPTO on or about June 17, 2022.

32. A continuation of the '855 Patent, the '155 Patent covers further techniques to initialize and manage groups of smaller, aligned pages as larger pages. It specifies page table entry formats that include bits distinguishing 4 KB, 64 KB, and larger pages, and using TLBs for different page sizes. The claimed invention enables the processor to set reserved bits across a group of aligned page table entries to designate a larger page, improving TLB hit rates and reducing page-walk frequency. This improves memory subsystem performance and allows processors to implement more flexible memory-management policies.

33. Defendants are not licensed to this patent, either expressly or implicitly. Plaintiff has complied with the requirements of 35 U.S.C. § 287 in respect of this patent.

### f.   US PATENT NO. 10,445,244

34. US Patent 10,445,244 ('244 Patent), invented by Edward Grochowski, Julio Gago, Roger Gramunt, Roger Espasa, and Rolf Kassa, was filed by Intel Corp. on December 19, 2016, and issued on October 15, 2019. Intel Corp. conveyed to UNMRI all rights, title, and interest in and to the patent, including the right to sue and recover for past infringements, by written assignment recorded in the USPTO on or about June 17, 2022.

35. This patent claims processor and system techniques to initialize and recognize multiple page sizes, including intermediate sizes (e.g., 64 KB formed by aligning sixteen 4 KB pages). It provides for bit fields in page table entries that identify page size and prescribe caching and translation behavior through size-specific TLBs. The claimed invention initializes aligned entries, sets reserved bits to mark combination, and caches those entries in a TLB corresponding to the larger page size. These features reduce translation overhead, increase TLB efficiency, and offer practical super-page support with minimal disruption to existing paging structures, improving performance for workloads sensitive to TLB coverage and page-walk latency.

36. Defendants are not licensed to this patent, either expressly or implicitly. Plaintiff has complied with the requirements of 35 U.S.C. § 287 in respect of this patent.

### g. US PATENT NO. 11,074,191

37. US Patent No. 11,074,191 ('191 Patent), invented by Ben-Zion Friedman, Jacob Doweck, Eliezer Weissmann, James B. Crossland, and Ohad Falik, was filed by Intel Corp. on November 3, 2017, and issued on July 27, 2021. Intel Corp. conveyed to UNMRI all rights, title, and interest in and to the patent, including the right to sue and recover for past infringements, by written assignment recorded in the USPTO on or about June 17, 2022.

38. This patent provides for an enhanced virtual-memory translation instruction set and mechanisms with explicit support for returning page attributes. The instruction set accepts a virtual address and returns the physical address and attributes (access rights, presence, caching policy, modified/accessed state, page size, fault status), supporting virtualization contexts (guest/host) and both synchronous and asynchronous invocation models. The claimed invention enables software to query mappings and protections without memory data access, thus facilitating fast permission checks, fault

diagnostics, and virtualization operations where both guest physical and host physical addresses and attributes may be retrieved efficiently.

39. Defendants are not licensed to this patent, either expressly or implicitly. Plaintiff has complied with the requirements of 35 U.S.C. § 287 in respect of this patent.

## II.    ACCUSED PRODUCTS

### a.  OVERVIEW

40. The NXP products accused of infringing the Asserted Patents ("Accused Products") comprise all NXP products that include processor cores designed according to Arm v8-A, Arm v8-R, Arm v9-A and Arm v9-R design architectures. Those processor cores implement infringing virtual memory-management techniques in "Memory Management Units" ("MMUs") that leverage the Arm AArch32 and AArch64 memory architecture, as discussed below in sections III-IX. On information and belief, such NXP products comprise at least: NXP I.MX 8 and I.MX 9 Application Processors; S32 Automotive Processors; and the Layerscape 10 and 12 series Broadband Modem and Residential Gateway and Layerscape development systems product lines. The Accused Products also comprise NXP's portfolio of processors built on Power Architecture technology, including their virtual-memory management techniques. On information and belief, such NXP products comprise at least the QorIQ and PowerQUICC product lines.

41. To the extent that claim limitations of the Asserted Patents recite a modem in addition to a processor (see section VII below), those claims are infringed by NXP products comprising processor cores designed according to Arm v8-A, Arm v8-R, Arm v9-A and Arm v9-R design architectures (or Power Architecture designs), and modems. On information and belief, such NXP products comprise at least: the Broadband Modem and Residential Gateway product line incorporating Layerscape 1046 and 1026

processors; and the Layerscape Access LA12xx Development System product line (together, "Accused Modem Products").

### b.  NXP I.MX 8 AND I.MX 9 APPLICATION PROCESSORS

NXP's i.MX Application Processors are Arm-based chips designed to deliver scalable compute, graphics, connectivity, and security for embedded devices. Representative families include the i.MX 8 series, and the i.MX 9 series, featuring Arm Cortex-A cores with companion real-time cores in certain variants. These processors implement virtual-memory address translation through Memory Management Units designed according to Arm v8-A, v-8-R, v9-A and v9-R architectures, enabling protected multitasking and modern operating systems such as Linux and Android. Key features include high integration, comprehensive software enablement, and broad performance scaling to suit multimedia, human–machine interface, smart home, industrial IoT, and portable healthcare applications. As an example of the several i.MX 9 processor ranges manufactured, sold, imported and distributed by and on behalf of NXP, the i.MX 91 family comprises application processors intended for industrial-automation, smart-home, electric vehicle, and medical settings "powered by an Arm Cortex-A55."



> The i.MX 91 family of applications processors enables smart home controllers, home entertainment, connected appliances, industrial automation and medical platforms applications. Powered by an Arm® Cortex-A55, i.MX 91 MPUs integrate a single chip PMIC, PF9453, to enable the rapid creation of Linux-based IoT edge devices. Emerging protocols, such as Matter® for the smart home or the ISO 15118-20 standard for electric vehicle (EV) chargers, create inflection points for new product categories across IoT and industrial markets.

[2]

### c. S32 AUTOMOTIVE PROCESSORS

42. The NXP S32 Automotive Processor product family is a portfolio of automotive-grade processors designed for vehicle networking, domain and zonal control, radar and vision processing, electrification, and central compute in software-defined vehicles. The product line combines Arm Cortex-A application cores with Cortex-M and Cortex-R real-time cores, functional safety up to ISO 26262 ASIL D, hardware security, and dedicated networking accelerators. S32 Automotive Processors include Arm Cortex-A53 cores that implement a hardware Memory Management Unit, enabling virtual memory management, process isolation, and support for high-level operating systems.

43. As examples of the various application settings for S32 Automotive Processors, vehicle network processors in the S32G family feature Arm Cortex-A53 processor cores alongside Cortex-M7 cores. Such devices are deployed in central and service-oriented gateways, domain controllers, safety co-processors, and vehicle computers. Real-time processors in the S32Z and S32E families focus on safety processing and control. They are suited for domain and zonal controllers, electrified vehicle subsystems, and smart actuation. Radar-oriented S32R devices target the complete range of automotive radar applications used in safety ratings and advanced driver assistance, while vision-focused S32V processors support machine learning and sensor fusion tasks in perception stacks. Another line of processor devices marketed as the S32N processor family targets central compute for software-defined vehicles. By way of

---

[2] NXP, https://www.nxp.com/products/i.MX91 (last accessed Feb. 19, 2026).

an example, the S32G2 Processor for Vehicle Networking includes Arm Cortex-A53 processor cores and is suited to serve as zonal and domain processor inside a vehicle's computer network.







3

#### a. ACCUSED MODEM PRODUCTS

44. The Accused Modem Products include at least the Broadband Modem and Residential Gateway product line incorporating Layerscape 10-series processors; and the Layerscape Access LA12xx Development System product line. These products are suited for embedding in (or, in the case of the Layerscape Access LA12xx Development System, developing) appliances to deliver broadband data, voice and video services to a home or customer premises. In those product lines, NXP bundles broadband modems (including broadband modems procured from or provided by external sources) with its network processors that contain Arm Cortex-A processor cores and MMUs, as exemplified by the LS1043 network processor.

---

[3] NXP, *S32G2 Processors for Vehicle Networking*, https://www.nxp.com/products/S32G2 (last visited Feb. 19, 2026).



---

[4] NXP, *Broadband Modem and Residential Gateway*, https://www.nxp.com/applications/BROADBAND-GATEWAY (last visited Feb. 19, 2026).

## III.    INFRINGEMENT OF THE '620 PATENT

45. Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

46. NXP has and continues to directly and indirectly (by inducement since at least the service of this complaint) infringe one or more claims of the '620 Patent in violation of 35 U.S.C. § 271, including, but not limited to, claim 1. Claim 1 reads as follows:

A machine-implemented method comprising:

receiving an instruction to translate a virtual memory pointer to a physical memory address for a memory location without accessing data stored at the physical memory address in response to the instruction;

translating the virtual memory pointer to the physical memory address based on page table information; and returning in one or more registers, as a result of the instruction to translate the

---

[5] NXP, *Layerscape 1043A and 1023 Processors*, https://www.nxp.com/products/LS1043A (last visited Feb. 19, 2026).

virtual memory pointer to the physical memory address for the memory location without accessing data stored at the physical memory address in response to the instruction, the physical memory address and one or more page attributes without returning data stored at physical memory address in response to the instruction, the one or more page attributes including a set of access bits,

wherein returning in said one or more registers, the physical memory address and the one or more (PA) page attributes in response to the instruction comprises: obtaining the physical memory address and the one or more page attributes from a translation look-aside buffer entry to return in said one or more registers in response to the instruction.

47.    NXP has and continues to directly infringe the '620 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims of the '620 Patent in violation of 35 U.S.C. § 271(a), including the Accused Products.

48.    For example, each of the Accused Products comprises Cortex CPU cores designed by ARM that implement a Memory Management Unit ("MMU"). Those MMUs practice, in accordance with claim 1, a "machine-implemented method comprising receiving an instruction to translate a virtual memory pointer to a physical memory address for a memory location without accessing data stored at the physical memory address in response to the instruction".

### About the MMU

The Cortex-A72 processor is an ARMv8 compliant processor that supports execution in both the AArch64 and AArch32 states.

In AArch32 state, the ARMv8 address translation system resembles the ARMv7 address translation system with LPAE and Virtualization Extensions. In AArch64 state, the ARMv8 address translation system resembles an extension to the Long Descriptor Format address translation system to support the expanded virtual and physical address spaces. For more information regarding the address translation formats, see the *ARM Architecture Reference Manual ARMv8*. Key differences between the AArch64 and AArch32 address translation systems are that the AArch64 state provides the ability to:

- Select the translation granule to either be 4KB or 64KB. In AArch32, the translation granule is limited to 4KB.
- Configure the ASID size to be either 8-bit or 16-bit. In AArch32, the ASID is limited to an 8-bit value.

The maximum supported physical address size is:

- 44-bit in AArch64 state.
- 40-bit in AArch32 state.

The MMU controls table walk hardware that accesses translation tables in memory. The MMU works with the L1 and L2 memory system to translate a *Virtual Address* (VA) to a *Physical Address* (PA). The MMU enables fine-grained memory system control through a set of virtual-to-physical address mappings and memory attributes held in the L1 and L2 *Translation Lookaside Buffers* (TLBs).

The MMU has the following features:

- 48-entry fully-associative L1 instruction TLB.
- 32-entry fully-associative L1 data TLB for data load and store pipelines.
- 4-way set-associative 1024-entry L2 TLB in each processor.
- Intermediate table walk caches.
- The TLB entries contain a global indicator or an *Address Space Identifier* (ASID) to permit context switches without TLB flushes.
- The TLB entries contain a *Virtual Machine Identifier* (VMID) to permit virtual machine switches without TLB flushes.

49. As detailed, by way of example, in the ARM documentation for Armv8-A processors featured in NXP's Accused Products, "Armv8-A uses a Virtual Memory system where the addresses used by code (virtual addresses) are translated into physical addresses which are used by the memory system. This translation is performed by a part of the processor that is called a Memory Management Unit (MMU)."[6]

50. The Accused Products' MMUs perform "translating the (VMP) virtual memory pointer to the (PMA) physical memory address based on (PTI) page table information." As described in the Armv8-A literature, "[w]hen the processor issues a virtual address for an instruction fetch, or data access, the MMU hardware translates the virtual address to the corresponding physical address."[7]

51. The MMUs in the Accused Products practice "returning in one or more registers, the physical memory address and one or more page attributes without returning data stored at physical memory

---

[6] See, e.g., ARM, *Armv8-A Address Translation Version 1.1* (July 3, 2019), at 4, https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5.(last visited Jan. 22, 2026)

[7] *Id*. at 8.

address in response to the instruction, the one or more page attributes including a set of access bits." For instance, The MMUs implement ARM's Address Translation ("AT") instructions as part of the A64 Instruction Class, which perform memory address translation "as if reading from the given virtual address" and store the physical memory address resulting from the translation in a register denoted by PAR_EL1. In doing so, the MMU returns "memory attributes" for the returned output address,[8] including access bits.



---

[8] See, e.g., ARM, *Arm Architecture Reference Manual for A-Profile Architecture*, https://developer.arm.com/documentation/ddi0487/latest (last visited Feb, 11, 2026), at C5-1161; ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile*, https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026), at D8-2008.

| Field descriptions | |
|---|---|
| 63 | 32 |
| Input address for translation | |
| 31 | 0 |
| Input address for translation | |

**IA, bits [63:0]**

Input address for translation. The resulting address can be read from the PAR_EL1.

If the address translation instructions are targeting a translation regime that is using AArch32, and so has a VA of only 32 bits, then VA[63:32] is res0.

[9]

52.  Furthermore, the Accused Products' MMUs perform a method "wherein returning in said one or more registers, the physical memory address and the one or more (PA) page attributes in response to the instruction comprises: obtaining the physical memory address and the one or more page attributes from a translation look-aside buffer entry to return in said one or more registers in response to the instruction." For example, the "MMU enables fine-grained memory system control through a set of virtual-to-physical address mappings and memory attributes held in the L1 and L2 Translation Look-Aside Buffers (TLBs)."[10]

---

[9]  *Id.*, ARM, *Arm Architecture Reference Manual for A-Profile Architecture*, https://developer.arm.com/documentation/ddi0487/latest (last visited Feb, 11, 2026), at C5-1153 – C-1161.

[10] See, e.g., ARM, *ARM Cortex-A72 MPCore Processor Technical Reference Manual r0p3: About the MMU*, https://developer.arm.com/documentation/100095/0003/Memory-Management-Unit/About-the-MMU (last visited Feb. 19, 2026).

The MMU controls table walk hardware that accesses translation tables in memory. The MMU works with the L1 and L2 memory system to translate a *Virtual Address* (VA) to a *Physical Address* (PA). The MMU enables fine-grained memory system control through a set of virtual-to-physical address mappings and memory attributes held in the L1 and L2 *Translation Look-aside Buffers* (TLBs).

The MMU has the following features:

- 48-entry fully-associative L1 instruction TLB.
- 32-entry fully-associative L1 data TLB for data load and store pipelines.
- 4-way set-associative 1024-entry L2 TLB in each processor.
- Intermediate table walk caches.
- The TLB entries contain a global indicator or an *Address Space Identifier* (ASID) to permit context switches without TLB flushes.
- The TLB entries contain a *Virtual Machine Identifier* (VMID) to permit virtual machine switches without TLB flushes.

53.  NXP has and continues to indirectly infringe the '620 Patent by inducing others to infringe one or more claims of the '620 Patent through making, using, selling, offering for sale, distributing, and/or importing the Accused Products. For example, NXP induces its distributors and customers to directly infringe the '620 Patent by using, selling, offering for sale, or importing in or into the United States the Accused Products, including the State of Texas and this District. NXP was and has been aware of the '620 Patent and its coverage of Accused Products, no later than service of this Complaint, and was aware that its actions as to importers, distributors, resellers, wholesalers, retailers, and/or end-users of the Accused Products would induce infringement. For example, NXP knowingly and intentionally instructs its customers, distributors, and end-users to infringe at least through user manuals, product documentation, services, and other materials, such as those located on NXP's website. For instance, NXP provides "hardware design guides" (as well as numerous reference manuals, user guides and topical white papers) for several NXP i.MX 8 and 9 processors, to help hardware engineers design, test and implement their own products incorporating the processors. NXP claims that a hardware design guide "provides examples on board layout and design checklists to ensure first-pass success, and solutions to avoid board bring-up problems,"[11] thereby facilitating customers' infringing use of the Accused Products.[12]

---

[11] See, e.g., i.MX 93 Hardware Design Guide, p. 2.
[12] See, e.g., i.MX 93 processor hardware design guide and other reference manuals, user guides and white papers available here (last accessed February 19, 2026): https://www.nxp.com/products/processors-and-

Furthermore, NXP provides development boards for the Accused Products to ensure customers can test and develop products incorporating the Accused Products in various application settings.[13] Additionally, NXP provides online training modules inciting customers to market and use the Accused Products to solve various needs (e.g.: "Next-Gen Edge AI: Accelerate Power-Efficient Machine Learning with the NXP i.MX 93 Applications Processor Family").[14] By providing instruction and training to customers and end-users on how to use the Accused Products, in order to promote the sales of these products, in a manner that directly infringes one or more claims of the '620 Patent, including at least claim 1, NXP specifically intended to induce infringement of the '620 Patent.

54.  NXP's direct and indirect infringement of the '620 Patent has caused, and will continue to cause, substantial damage to UNMRI. UNMRI is, therefore, entitled to an award of damages adequate to compensate for NXP's infringement of the '620 Patent, but in no event less than a reasonable royalty for NXP's use, importation and/or sale of the Accused Products, together with pre- and post-judgment interest, attorneys' fees, and costs as fixed by the Court under 35 U.S.C. §§ 284 and 285.

## IV.  INFRINGEMENT OF THE '703 PATENT

55. Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

56. NXP has and continues to directly and indirectly (by inducement since at least the service of this Complaint) infringe one or more claims of the '703 Patent in violation of 35 U.S.C. § 271, including, but not limited to, claim 1. Claim 1 reads as follows:

---

microcontrollers/arm-processors/i-mx-applications-processors/i-mx-9-processors/i-mx-93-applications-processor-family-arm-cortex-a55-ml-acceleration-power-efficient-mpu:i.MX93.

[13]  See, e.g., https://www.nxp.com/design/design-center/development-boards-and-designs/FRDM-IMX93. ("The FRDM i.MX 93 development board is a low-cost and compact development board featuring the i.MX93 applications processor […] the board is ideal for developing modern Industrial and IoT applications.")

[14] See, e.g., NXP, https://www.nxp.com/design/design-center/training/TIP-NEXT-GEN-AI-MACHINE-LEARNING-WITH-IMX93 (last visited Feb. 19, 2026).

A processor comprising:

a plurality of registers;

at least one translation look aside buffer, wherein the at least one translation look aside buffer is to include a plurality of entries, wherein at least one entry is to include a physical address and a plurality of attributes associated with the physical address;

a page miss handler to perform a table walk; and

a physical address return register, wherein the physical address return register is a 64-bit register,

wherein the processor is to receive an instruction to translate a virtual address to a first physical address,

wherein the instruction is a kernel level privileged instruction, and

wherein the instruction is to cause the processor, when in a 64-bit mode, to:

translate the virtual address to the first physical address;

store the first physical address translated from the virtual address in the physical address return register; and

store at least one attribute associated with the first physical address translated from the virtual address in the physical address return register.

57. NXP has and continues to directly infringe the '703 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims of the '703 Patent in violation of 35 U.S.C. § 271(a), including but not limited to the Accused Products.

58. For example, each of the Accused Products comprises Cortex CPU cores designed by ARM (e.g., "a processor"). They comprise a "plurality of registers," as set out in the documentation for the ARM designs NXP used to make the Accused Products.[15] The Accused Products implement at least one TLB, as the ARM architecture implements "Translation Lookaside Buffers (TLBs) [to] reduce the average cost of a memory access by caching the results of translation table walks."[16] The TLBs further comprise a "plurality of entries," as referenced in the same documentation.

---

[15] See, e.g., ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile*, https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026), at A1-33.
[16] *Id*. at D5.7.

59. The Accused Products comprise TLBs "wherein at least one entry is to include a physical address and a plurality of attributes associated with the physical address." Indeed, the documentation for those TLBs confirms that each "TLB entry typically contains not only physical and virtual addresses, but also attributes such as memory type, cache policies, access permissions, the Address Space ID (ASID), and the Virtual Machine ID (VMID).[17]

60. The Accused Products include a "page miss handler to perform a table walk", as they implement MMUs that "will automatically read the translation tables when necessary, this process is known as a Table Walk."[18] Moreover, if "the TLB does not contain a valid translation for the virtual address that is issued by the processor, which is known as a TLB miss, an external translation table walk or lookup is performed. Dedicated hardware within the MMU enables it to read the translation tables in memory."[19]

---

[17] See, e.g., ARM, *Armv8-A Address Translation Version 1.1*, at 27 (July 3, 2019), https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5 (last visited Feb. 19, 2026).
[18] *Id*. at 4.
[19] *Id*. at 27.

61. Accused Products implement a "physical address return register, wherein the physical address return register is a 64-bit register." For instance, they implement PAR_EL1, a 64-bit register whose stated purpose is to receive the physical address from any address translation operation.



62. The Accused Products "receive an instruction to translate a virtual address to a (FPA) first physical address, wherein the instruction is a kernel level privileged instruction." As an example, the operating kernel runs in EL1 with privileged access permissions.

[20] See, e.g., ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile*, at D8.2.69, https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026); ARM, *Arm Architecture Reference Manual for A-Profile Architecture*, https://developer.arm.com/documentation/ddi0487/latest (last visited Feb, 11, 2026), at D24-9381.

## 7    Access permissions

Access permissions are controlled through translation table entries. Access permissions control whether a region is readable or writeable, or both, and can be set separately to EL0 for unprivileged and access to EL1, EL2, and EL3 for privileged accesses, as shown in the following table.

| AP | Unprivileged (EL0) | Privileged (EL1/2/3) |
|----|--------------------|----------------------|
| 00 | No access | Read and write |
| 01 | Read and write | Read and write |
| 10 | No access | Read-only |
| 11 | Read-only | Read-only |

The operating system kernel, as normal, runs in EL1. The OS defines the translation table mappings, which are used by the kernel itself and by the applications that run at EL0. Some distinction between unprivileged and privileged access permissions is required as the kernel specifies different permissions for its own code and for applications.

The hypervisor, which runs at EL2, and the EL3 Secure monitor only have translation schemes for their own use and there is no need for a split in permissions between privileged and unprivileged.

[21]

63.  The Accused Products implement an instruction "to cause the processor, when in a 64-bit mode, to: translate the virtual address to the first physical address; store the first physical address translated from the virtual address in the physical address return register; and store at least one attribute associated with the first physical address translated from the virtual address in the physical address return register." For example, the Accused Products implement instructions within the ARM instruction set such as the "Address Translation" instructions ("AT"), which specifies that "the address being translated is held in the 64-bit address argument register." If "the address translation is successful, the resulting PA [i.e. physical address] is returned in PAR_EL1," which includes attributes associated with the translated address.[22]

---

[21] See, e.g., ARM, *Armv8-A Address Translation Version 1.1*, at 22 (July 3, 2019), https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5 (last visited Feb. 19, 2026).

[22] See, e.g., ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile*, at D5-1757,    https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026).

**Address translation instructions, AT\***

The A64 assembly language syntax for address translation instructions is:

    AT <operation>, <Xt>

Where:

| | | |
|---|---|---|
| <operation>. | Is one of S1E1R, S1E1W, S1E0R, S1E0W, S12E1R, S12E1R, S12E0R, S12E0W, S1E2R, S1E2W, S1E3R, or S1E3W. | |
| | <operation> has a structure of <stages><level><read|write>, where: | |
| | <stages>. | Is one of: |
| | S1. | Stage 1 translation. |
| | S12. | Stage 1 translation followed by stage 2 translation. |
| | <level>. | Describes the Exception Level that the translation applies to. Is one of: |
| | E0. | EL0. |
| | E1. | EL1. |
| | E2. | EL2. |
| | E3. | EL3. |
| | | If <level> is higher than the current Exception Level the instruction is UNDEFINED. |
| | <read|write> | |
| | | Is one of: |
| | R. | Read. |
| | W. | Write. |
| <Xt>. | The address to be translated. No alignment restrictions apply for the address. | |

If EL2 is not implemented, the AT S1E2R and AT S1E2W instructions are UNDEFINED.

—— Note ——

If EL2 is not implemented but EL3 is implemented, the AT S12E* instructions are not UNDEFINED, but behave the same way as the equivalent AT S1E* instructions. This is consistent with the behavior if EL2 is implemented but stage 2 translation is disabled.

In each case, the address being translated is held in the 64-bit address argument register, Xt. If the address translation instruction uses a translation regime that is using AArch32, meaning it requires a VA of only 32 bits, then VA[63:32] is RES0.

If the address translation is successful, the resulting PA is returned in PAR_EL1.PA, and PAR_EL1.F is set to 0 to indicate that the translation was successful. Otherwise, see *Synchronous faults generated by address translation instructions* on page D5-1758.

[23]

64. NXP has and continues to indirectly infringe the '703 Patent by inducing others to infringe one or more claims of the '703 Patent through making, using, selling, offering for sale, distributing, and/or importing the Accused Products. For example, NXP induces its distributors and customers to directly infringe the '703 Patent by using, selling, offering for sale, or importing in or into the United States the Accused Products, including the State of Texas and this District. NXP was and has been aware of the '703 Patent and its coverage of Accused Products, no later than service of this Complaint, and was aware that its actions as to importers, distributors, resellers, wholesalers, retailers, and/or end-users of the Accused Products would induce infringement. For example, NXP knowingly and intentionally instructs its

---

[23] *Id.*

customers, distributors, and end-users to infringe at least through user manuals, product documentation, services, and other materials, such as those located on NXP's website. For instance, NXP provides "hardware design guides" (as well as numerous reference manuals, user guides and topical white papers) for several NXP i.MX 8 and 9 processors, to help hardware engineers design, test and implement their own products incorporating the processors. NXP claims that a hardware design guide "provides examples on board layout and design checklists to ensure first-pass success, and solutions to avoid board bring-up problems,"[24] thereby facilitating customers' infringing use of the Accused Products.[25] Furthermore, NXP provides development boards for the Accused Products to ensure customers can test and develop products incorporating the Accused Products in various application settings.[26] Additionally, NXP provides online training modules inciting customers to market and use the Accused Products to solve various needs (e.g.: "Next-Gen Edge AI: Accelerate Power-Efficient Machine Learning with the NXP i.MX 93 Applications Processor Family").[27] By providing instruction and training to customers and end-users on how to use the Accused Products, in order to promote the sales of these products, in a manner that directly infringes one or more claims of the '703 Patent, including at least claim 1, NXP specifically intended to induce infringement of the '703 Patent.

65. NXP's direct and indirect infringement of the '703 Patent has caused, and will continue to cause, substantial damage to UNMRI. UNMRI is, therefore, entitled to an award of damages adequate to

---

[24] See, e.g., i.MX 93 Hardware Design Guide, p. 2.

[25] See, e.g., i.MX 93 processor hardware design guide and other reference manuals, user guides and white papers available here (last accessed February 19, 2026): https://www.nxp.com/products/processors-and-microcontrollers/arm-processors/i-mx-applications-processors/i-mx-9-processors/i-mx-93-applications-processor-family-arm-cortex-a55-ml-acceleration-power-efficient-mpu:i.MX93.

[26] See, e.g., https://www.nxp.com/design/design-center/development-boards-and-designs/FRDM-IMX93. ("The FRDM i.MX 93 development board is a low-cost and compact development board featuring the i.MX93 applications processor […] the board is ideal for developing modern Industrial and IoT applications.")

[27] https://www.nxp.com/design/design-center/training/TIP-NEXT-GEN-AI-MACHINE-LEARNING-WITH-IMX93

compensate for NXP's infringement of the '703 Patent, but in no event less than a reasonable royalty for NXP's use, importation and/or sale of the Accused Products, together with pre- and post-judgment interest, attorneys' fees, and costs as fixed by the Court under 35 U.S.C. §§ 284 and 285.

## V.    INFRINGEMENT OF THE '855 PATENT

66. Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

67. NXP has and continues to directly infringe this patent (literally and/or under the doctrine of equivalents) by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims (including, but not limited to, claim 1) of the '855 Patent in violation of 35 U.S.C. § 271(a), including the Accused Products. NXP indirectly infringes (by inducement since at least the service of this Complaint) infringe one or more claims of the '855 Patent in violation of 35 U.S.C. § 271, including, but not limited to, claim 1. Claim 1 reads as follows:

> A method to support a plurality of page sizes of a virtual demand-paged memory system without significantly increasing miss-handling penalties, the method comprising:
>
> initializing a fixed plurality of page table entries for a fixed plurality of pages contiguous in a memory, each page having a first page size, wherein a linear address for each page in each page table entry corresponds to a physical address and the fixed plurality of pages is aligned;
>
> setting a first bit in each of the fixed plurality of page table entries, for access by an operation during a highest level of a page table walk on a multiple level page table hierarchy, to a value indicating whether or not the fixed plurality of pages is to be treated as one combined page having a second page size larger than the first page size; and
>
> when a miss occurs for at least one of the fixed plurality of pages, performing said page table walk.

68. To the extent that the preamble is limiting, the Accused Products practice a "method to support a plurality of page sizes of a virtual demand-paged memory system without significantly increasing miss-handling penalties." For instance, the Accused Products comprise processors equipped with ARM-designed MMUs that support a plurality of page sizes and implement the claimed method to do so without

significantly increasing miss-handling penalties. As an example, the Accused Products' MMUs implement AArch32 and AArch64 memory architectures, which define memory pages named "granules" of different sizes, such as "granule sizes […] 4KB, 16KB, and 64KB" in AArch64.

> AArch64 supports three different translation granules. These define the block size at the lowest level of translation table and control the size of translation tables in use. Larger granule sizes reduce the number of levels of translation table required and this can become an important consideration in systems using a hypervisor to provide virtualization.
>
> The supported granule sizes are 4KB, 16KB, and 64KB, and it is IMPLEMENTATION DEFINED which of the three are supported. Code that creates translation tables is able to read the Memory Model Feature Register 0 system register (ID_AA64MMFR0_EL1), to find out which are the supported sizes.  The size is configurable for each translation table within the Translation Control Register (TCR_EL1).

[28]

69. The Accused Products practice a method that includes "initializing a fixed plurality of page table entries for a fixed plurality of pages contiguous in a memory, each page having a first page size." For example, ARMv8-A and ARMv9-A provide a "feature known as contiguous block entries to efficiently use TLB space" by fixing a plurality of page table granules (e.g., pages) of the same size (e.g., 4KB, 16KB, 64KB).

> The TLB can hold a fixed number of entries. You can achieve best performance by minimizing the number of external memory accesses caused by translation table traversal and obtaining a high TLB hit rate. The Armv8-A architecture provides a feature known as contiguous block entries to efficiently use TLB space. Translation table block entries each contain a contiguous bit. When set, this bit signals to the TLB that it can cache a single entry covering translations for multiple blocks. A lookup can index anywhere into an address range covered by a contiguous block. The TLB can therefore cache one entry for a defined range of addresses, making it possible to store a larger range of virtual addresses within the TLB than is otherwise possible.
>
> To use a contiguous bit, the contiguous blocks must be adjacent, that is they must correspond to a contiguous range of virtual addresses. They must start on an aligned boundary, have consistent attributes, and point to a contiguous output address range at the same level of translation. The

---

[28] See, e.g., ARM, *Armv8-A Address Translation Version 1.1*, at 13 (July 3, 2019) https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5.

required alignment is that VA[20:16] for a 4KB granule or VA[28:21] for a 64KB granule, are the same for all addresses. The following numbers of contiguous blocks are required:

- 16 × 4KB adjacent blocks giving a 64KB entry with 4KB granule.

- 32 ×32MB adjacent blocks giving a 1GB entry for L2 descriptors.

- 128 ×16KB giving a 2MB entry for L3 descriptors when using a 16KB granule.

- 32 ×64Kb adjacent blocks giving a 2MB entry with a 64KB granule.

If these conditions are not met, a programming error occurs, which can cause TLB aborts or corrupted lookups. Possible examples of such an error include:

- One or more of the table entries do not have the contiguous bit set.

- The output of one of the entries points outside the aligned range.

With the Armv8-A architecture, incorrect use does not allow permissions checks outside of EL0 and EL1 valid address space to be escaped, or to erroneously provide access to EL3 space.

[29]

70. The Accused Products perform a method "wherein a linear address for each page in each page table entry corresponds to a physical address and the fixed plurality of pages is aligned". For instance, in a page table entry "the MMU hardware translates the virtual address to the corresponding physical address."[30] Furthermore, contiguous pages (also termed "blocks") forming the fixed plurality of pages are aligned by the MMU:

To use a contiguous bit, the contiguous blocks must be adjacent, that is they must correspond to a contiguous range of virtual addresses. They must start on an aligned boundary, have consistent attributes, and point to a contiguous output address range at the same level of translation. The

[31]

71. The Accused Products perform a method including "setting a first bit in each of the fixed plurality of page table entries, for access by an operation during a highest level of a page table walk on a multiple level page table hierarchy, to a value indicating whether or not the fixed plurality of pages is to be treated as one combined page having a second page size larger than the first page size." For instance,

---

[29] *Id*. at 28-29.
[30] *Id*. at 8.
[31] *Id*. at 28.

the Accused Products implement a contiguous bit, which "signals to the TLB that it can cache a single entry covering translations for multiple blocks."[32] The contiguous bit will indicate if multiple pages are to be treated as a larger single page when performing a page table walk on a multiple-level page table hierarchy, such as the Level 0 to Level 3 hierarchy defined in the Arm-v8A architecture:



[33]

72. NXP has and continues to indirectly infringe the '855 Patent by inducing others to infringe one or more claims of the '855 Patent through making, using, selling, offering for sale, distributing, and/or importing the Accused Products. For example, NXP induces its distributors and customers to directly infringe the '855 Patent by using, selling, offering for sale, or importing in or into the United States the Accused Products, including the State of Texas and this District. NXP was and has been aware of the '855 Patent and its coverage of Accused Products, no later than service of this Complaint, and was aware

---

[32] *Id*.
[33] *Id*. at 14.

that its actions as to importers, distributors, resellers, wholesalers, retailers, and/or end-users of the Accused Products would induce infringement. For example, NXP knowingly and intentionally instructs its customers, distributors, and end-users to infringe at least through user manuals, product documentation, services, and other materials, such as those located on NXP's website. For instance, NXP provides "hardware design guides" (as well as numerous reference manuals, user guides and topical white papers) for several NXP i.MX 8 and 9 processors, to help hardware engineers design, test and implement their own products incorporating the processors. NXP claims that a hardware design guide "provides examples on board layout and design checklists to ensure first-pass success, and solutions to avoid board bring-up problems,"[34] thereby facilitating customers' infringing use of the Accused Products.[35] Furthermore, NXP provides development boards for the Accused Products to ensure customers can test and develop products incorporating the Accused Products in various application settings.[36] Additionally, NXP provides online training modules inciting customers to market and use the Accused Products to solve various needs (e.g.: "Next-Gen Edge AI: Accelerate Power-Efficient Machine Learning with the NXP i.MX 93 Applications Processor Family").[37] By providing instruction and training to customers and end-users on how to use the Accused Products, in order to promote the sales of these products, in a manner that directly infringes one or more claims of the '855 Patent, including at least claim 1, NXP specifically intended to induce infringement of the '855 Patent.

---

[34] See, e.g., i.MX 93 Hardware Design Guide, p. 2.
[35] See, e.g., i.MX 93 processor hardware design guide and other reference manuals, user guides and white papers available here (last accessed February 19, 2026): https://www.nxp.com/products/processors-and-microcontrollers/arm-processors/i-mx-applications-processors/i-mx-9-processors/i-mx-93-applications-processor-family-arm-cortex-a55-ml-acceleration-power-efficient-mpu:i.MX93.
[36] See, e.g., https://www.nxp.com/design/design-center/development-boards-and-designs/FRDM-IMX93. ("The FRDM i.MX 93 development board is a low-cost and compact development board featuring the i.MX93 applications processor [...] the board is ideal for developing modern Industrial and IoT applications.")
[37] See, e.g., https://www.nxp.com/design/design-center/training/TIP-NEXT-GEN-AI-MACHINE-LEARNING-WITH-IMX93

73.  NXP's direct and indirect infringement of the '855 Patent has caused, and will continue to cause, substantial damage to UNMRI. UNMRI is, therefore, entitled to an award of damages adequate to compensate for NXP's infringement of the '855 Patent, but in no event less than a reasonable royalty for NXP's use, importation and/or sale of the Accused Products, together with pre- and post-judgment interest, attorneys' fees, and costs as fixed by the Court under 35 U.S.C. §§ 284 and 285.

## VI.  INFRINGEMENT OF THE '155 PATENT

74. Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

75. NXP has and continues to directly infringe this patent (literally and/or under the doctrine of equivalents) by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims (including, but not limited to, claim 1) of the '155 Patent in violation of 35 U.S.C. § 271(a), including the Accused Products. NXP indirectly infringes (by inducement since at least the service of this Complaint) infringe one or more claims of the '155 Patent in violation of 35 U.S.C. § 271, including, but not limited to, claim 1. Claim 1 reads as follows:

A processor, comprising:

a plurality of execution cores; and

a first translation lookaside buffer (TLB) coupled to the plurality of execution cores, the first TLB to store a first plurality of cached page table entries (PTEs) to translate virtual addresses to physical addresses of memory pages, each PTE having at least 64 bits and a same format;

a second translation lookaside buffer (TLB) coupled to the plurality of execution cores, the second TLB to store a second plurality of cached page table entries (PTEs), the second plurality of cached PTEs corresponding to memory pages having a different size than the first plurality of cached PTEs of the first TLB, to translate virtual addresses to physical addresses of memory pages, each PTE having at least 64 bits and the same format, the format includes:

a first single bit to indicate whether a corresponding memory page is a 4-kilobyte (KB) memory page or a larger size memory page, wherein a plurality of sequential 4 KB size physical memory pages having corresponding consecutive PTEs are to be combined into and treated as the larger size memory page, wherein the first bit is to indicate whether the corresponding memory page is either the 4 KB memory page or a 64 KB memory page or larger,

a second bit to indicate whether the corresponding memory page has been written,

a third bit to indicate whether the corresponding memory page has been accessed, and

a fourth bit to indicate whether the corresponding PTE is able to be used to perform address translation.

76. To the extent the preamble is limiting, the Accused Products include a "processor" as recited in the claim (see above section II). Each processor comprises a "plurality of execution cores", e.g., Arm Cortex processor cores, as shown below for the exemplary i.MX 93 Accused Product:



77. The Accused Products comprise "a first translation lookaside buffer (TLB) coupled to the plurality of execution cores, the first TLB to store a first plurality of cached page table entries (PTEs) to translate virtual addresses to physical addresses of memory pages, each PTE having at least 64 bits and a same format," as well as a "a second translation lookaside buffer (TLB) coupled to the plurality of execution cores, the second TLB to store a second plurality of cached page table entries (PTEs), the second plurality of cached PTEs corresponding to memory pages having a different size than the first plurality of cached PTEs of the first TLB, to translate virtual addresses to physical addresses of memory pages, each

---

[38] See, e.g., NXP, *IMX93AEC Datasheet*, at 2 (July 7, 2025), https://www.nxp.com/docs/en/data-sheet/IMX93AEC.pdf.

PTE having at least 64 bits and the same format." On information and belief, such TLBs are implemented in the processors featuring in the Accused Products.



## 10  The Translation Lookaside Buffer

The *Translation Lookaside Buffer* (TLB) is a cache of recently accessed page translations in the MMU. For each memory access performed by the processor, the MMU checks whether the translation is cached in the TLB. If the requested address translation causes a hit within the TLB, the translation of the address is immediately available.

Each TLB entry typically contains not only physical and virtual addresses, but also attributes such as memory type, cache policies, access permissions, the Address Space ID (ASID), and the *Virtual Machine ID* (VMID). If the TLB does not contain a valid translation for the virtual address that is issued by the processor, which is known as a TLB miss, an external translation table walk or lookup is performed. Dedicated hardware within the MMU enables it to read the translation tables in memory. The newly loaded translation can then be cached in the TLB for possible reuse if the translation table walk does not result in a page fault. The exact structure of the TLB differs between implementations of the Arm processors.

If the OS modifies translation entries that have been cached in the TLB, it is the responsibility of the OS to invalidate these stale TLB entries.

When executing A64 code, there is a TLBI, which is a TLB invalidate instruction. It has the form:

TLBI <type><level>{IS} {, <Xt>}

The following list gives some of the more common selections for the type field.

| | |
|---|---|
| **ALL** | All TLB entries. |
| **VMALL** | All TLB entries. This is stage 1 for current guest OS. |
| **VMALLS12** | All TLB entries. This is stage 1 and 2 for current guest OS. |
| **ASID** | Entries that match ASID in Xt. |
| **VA** | Entry for virtual address and ASID specified in Xt. |
| **VAA** | Entries for virtual address that is specified in Xt, with any ASID. |

Each Exception level, that is EL3, EL2, or EL1, has its own virtual address space that the operation applies to. The IS field specifies that this is only for Inner Shareable entries.

The <level> field simply specifies the Exception level virtual address space (can be 3, 2 or 1) that the operation must apply to.

The IS field specifies that this is only for Inner Shareable entries.

[39]

78. The Accused Products include TLBs that feature pages entries whose "format includes: a first single bit to indicate whether a corresponding memory page is a 4-kilobyte (KB) memory page or a larger size memory page, wherein a plurality of sequential 4 KB size physical memory pages having corresponding consecutive PTEs are to be combined into and treated as the larger size memory page, wherein the first bit is to indicate whether the corresponding memory page is either the 4 KB memory page or a 64 KB memory page or larger, a second bit to indicate whether the corresponding memory page has been written, a third bit to indicate whether the corresponding memory page has been accessed, and a fourth bit to indicate whether the corresponding PTE is able to be used to perform address translation. As

---

[39] See, e.g., ARM, *Armv8-A Address Translation Version 1.1* (July 3, 2019), at 27, https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5.

an example of the "first bit", the Accused Products implement a contiguous bit to indicate whether 4 KB granules are to be considered as part of a 64 KB memory page. An exemplary "second bit" is provided by the so-called dirty bit modifier flag of the Arm-v8-A and Arm-v9-A architectures, which indicates whether an entry has been written to or not. Similarly, the "third bit" is exemplified by the access flag bit implemented in the Arm-v8-A and Arm-v9-A architectures. The "fourth bit" is exemplified in the Arm-v8-A and Arm-v9-A architectures' translation fault flag, which identifies when address translation can be performed or not for a given page table entry.[40]

79.  NXP has and continues to indirectly infringe the '155 Patent by inducing others to infringe one or more claims of the '155 Patent through making, using, selling, offering for sale, distributing, and/or importing the Accused Products. For example, NXP induces its distributors and customers to directly infringe the '155 Patent by using, selling, offering for sale, or importing in or into the United States the Accused Products, including the State of Texas and this District. NXP was and has been aware of the '155 Patent and its coverage of Accused Products, no later than service of this Complaint, and was aware that its actions as to importers, distributors, resellers, wholesalers, retailers, and/or end-users of the Accused Products would induce infringement. For example, NXP knowingly and intentionally instructs its customers, distributors, and end-users to infringe at least through user manuals, product documentation, services, and other materials, such as those located on NXP's website. For instance, NXP provides "hardware design guides" (as well as numerous reference manuals, user guides and topical white papers) for several NXP i.MX 8 and 9 processors, to help hardware engineers design, test and implement

---

[40] See, e.g., ARM, *Armv8-A Address Translation Version 1.1* (July 3, 2019), https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5 (last visited Feb. 19, 2026), at 17; ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile*, https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026), at D5-1738 – D5-1739, D5-1757, D5-1777, G4-3934; https://developer.arm.com/documentation/ddi0406/cb/System-Level-Architecture/Virtual-Memory-System-Architecture--VMSA-/VMSA-memory-aborts/MMU-faults?lang=en .

their own products incorporating the processors. NXP claims that a hardware design guide "provides examples on board layout and design checklists to ensure first-pass success, and solutions to avoid board bring-up problems," [41] thereby facilitating customers' infringing use of the Accused Products. [42] Furthermore, NXP provides development boards for the Accused Products to ensure customers can test and develop products incorporating the Accused Products in various application settings.[43] Additionally, NXP provides online training modules inciting customers to market and use the Accused Products to solve various needs (e.g.: "Next-Gen Edge AI: Accelerate Power-Efficient Machine Learning with the NXP i.MX 93 Applications Processor Family").[44] By providing instruction and training to customers and end-users on how to use the Accused Products, in order to promote the sales of these products, in a manner that directly infringes one or more claims of the '155 Patent, including at least claim 1, NXP specifically intended to induce infringement of the '155 Patent.

80.  NXP's direct and indirect infringement of the '155 Patent has caused, and will continue to cause, substantial damage to UNMRI. UNMRI is, therefore, entitled to an award of damages adequate to compensate for NXP's infringement of the '155 Patent, but in no event less than a reasonable royalty for NXP's use, importation and/or sale of the Accused Products, together with pre- and post-judgment interest, attorneys' fees, and costs as fixed by the Court under 35 U.S.C. §§ 284 and 285.

---

[41] See, e.g., i.MX 93 Hardware Design Guide, p. 2.
[42] See, e.g., i.MX 93 processor hardware design guide and other reference manuals, user guides and white papers available here (last accessed February 19, 2026): https://www.nxp.com/products/processors-and-microcontrollers/arm-processors/i-mx-applications-processors/i-mx-9-processors/i-mx-93-applications-processor-family-arm-cortex-a55-ml-acceleration-power-efficient-mpu:i.MX93.
[43]  See,  e.g.,  https://www.nxp.com/design/design-center/development-boards-and-designs/FRDM-IMX93. ("The FRDM i.MX 93 development board is a low-cost and compact development board featuring the i.MX93 applications processor […] the board is ideal for developing modern Industrial and IoT applications.")
[44]  See,  e.g.,  https://www.nxp.com/design/design-center/training/TIP-NEXT-GEN-AI-MACHINE-LEARNING-WITH-IMX93

VII.    **INFRINGEMENT OF THE '916 PATENT**

81. Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

82. NXP has and continues to directly infringe this patent (literally and/or under the doctrine of equivalents) by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims (including, but not limited to, claim 1) of the '916 Patent in violation of 35 U.S.C. § 271(a), including the Accused Products. NXP indirectly infringes (by inducement since at least the service of this Complaint) infringe one or more claims of the '916 Patent in violation of 35 U.S.C. § 271, including, but not limited to, claim 1. Claim 1 reads as follows:

A system comprising:

a modem; and

a processor comprising:

 a plurality of registers;

 at least one translation look aside buffer, wherein the at least one translation look aside buffer is to include a plurality of entries, wherein at least one entry is to include a physical address and a plurality of attributes associated with the physical address;

 a page miss handler to perform a table walk; and

 a physical address return register, wherein the physical address return register is a 64-bit register,

wherein the processor is to receive an instruction to translate a virtual address to a first physical address, wherein the instruction is a kernel level privileged instruction, and

 wherein the instruction is to cause the processor, when in a 64-bit mode, to:

   translate the virtual address to the first physical address;

   store the first physical address translated from the virtual address in the physical address return register; and

   store at least one attribute associated with the first physical address translated from the virtual address in the physical address return register.

83.  NXP has and continues to directly infringe the '916 Patent, literally and/or under the doctrine of equivalents. Accused Products that include modems (Accused Modem Products) fall within the scope of one or more claims of the '916 Patent in violation of 35 U.S.C. § 271 (a)-(c). For example, each of the

Accused Modem Products comprises Cortex CPU cores designed by ARM (e.g., "a processor") and a "modem." For instance, exemplary product NXP LA1224 programmable baseband processor bundles a processor comprising Cortex CPU cores with a modem.

84. The Accused Modem Products comprise a "plurality of registers," as set out in the documentation for the ARM designs NXP used to make the Accused Products.[45] The Accused Products implement at least one TLB, as the ARM architecture implements "Translation Lookaside Buffers (TLBs) [to] reduce the average cost of a memory access by caching the results of translation table walks."[46] The TLBs further comprise a "plurality of entries," as referenced in the same documentation.



85. Accused Modem Products comprise TLBs "wherein at least one entry is to include a physical address and a plurality of attributes associated with the physical address." Indeed, the documentation for

---

[45] See, e.g., ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile*, at A1.3.1, B2.3, https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026).
[46] *Id*. at D5.7.
[47] *Id.*

those TLBs confirms that each "TLB entry typically contains not only physical and virtual addresses, but also attributes such as memory type, cache policies, access permissions, the Address Space ID (ASID), and the Virtual Machine ID (VMID).[48]

86. Accused Modem Products include a "page miss handler to perform a table walk", as they implement MMUs that "will automatically read the translation tables when necessary, this process is known as a Table Walk."[49] Moreover, if "the TLB does not contain a valid translation for the virtual address that is issued by the processor, which is known as a TLB miss, an external translation table walk or lookup is performed. Dedicated hardware within the MMU enables it to read the translation tables in memory."[50]

87. Accused Modem Products implement a "physical address return register, wherein the physical address return register is a 64-bit register." For instance, they implement PAR_EL1, a 64-bit register whose stated purpose is to receive the physical address from any address translation operation.

---

[48] See, e.g., ARM, *Armv8-A Address Translation Version 1.1* (July 3, 2019), at 27, https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5.
[49] *Id*. at 4.
[50] *Id*. at 27.



88. The Accused Modem Products "receive an instruction to translate a virtual address to a (FPA) first physical address, wherein the instruction is a kernel level privileged instruction." As an example, the operating kernel runs in EL1 with privileged access permissions.

---

[51] See, e.g., ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile*, https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026), at D8.2.69; ARM, *Arm Architecture Reference Manual for A-Profile Architecture*, https://developer.arm.com/documentation/ddi0487/latest (last visited Feb, 11, 2026), at D24-9381.



89. The Accused Modem Products implement an instruction "to cause the processor, when in a 64-bit mode, to: translate the virtual address to the first physical address; store the first physical address translated from the virtual address in the physical address return register; and store at least one attribute associated with the first physical address translated from the virtual address in the physical address return register." For example, the Accused Products implement instructions within the ARM instruction set such as the "Address Translation" instructions ("AT"), which specifies that "the address being translated is held in the 64-bit address argument register." If "the address translation is successful, the resulting PA [i.e. physical address] is returned in PAR_EL1," which includes attributes associated with the translated address.[53]

---

[52] See, e.g., ARM, *Armv8-A Address Translation Version 1.1,* at 22 (July 3, 2019), https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5.

[53] See, e.g., ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile*, at D5-1757, https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026).

**Address translation instructions, AT***

The A64 assembly language syntax for address translation instructions is:

    AT <operation>, <Xt>

Where:

<operation>.    Is one of S1E1R, S1E1W, S1E0R, S1E0W, S12E1R, S12E1W, S12E0R, S12E0W, S1E2R, S1E2W, S1E3R, or S1E3W.

                  <operation> has a structure of <stages><level><read|write>, where:

                  <stages>.    Is one of:

                            S1.        Stage 1 translation.

                            S12.       Stage 1 translation followed by stage 2 translation.

                  <level>.    Describes the Exception Level that the translation applies to. Is one of:

                            E0.        EL0.

                            E1.        EL1.

                            E2.        EL2.

                            E3.        EL3.

                            If <level> is higher than the current Exception Level the instruction is UNDEFINED.

                  <read|write>

                            Is one of:

                            R.        Read.

                            W.        Write.

<Xt>.    The address to be translated. No alignment restrictions apply for the address.

If EL2 is not implemented, the AT S1E2R and AT S1E2W instructions are UNDEFINED.

———— Note ————

If EL2 is not implemented but EL3 is implemented, the AT S12E* instructions are not UNDEFINED, but behave the same way as the equivalent AT S1E* instructions. This is consistent with the behavior if EL2 is implemented but stage 2 translation is disabled.

————————————

In each case, the address being translated is held in the 64-bit address argument register, Xt. If the address translation instruction uses a translation regime that is using AArch32, meaning it requires a VA of only 32 bits, then VA[63:32] is RES0.

If the address translation is successful, the resulting PA is returned in PAR_EL1.PA, and PAR_EL1.F is set to 0 to indicate that the translation was successful. Otherwise, see *Synchronous faults generated by address translation instructions* on page D5-1758.

[54]

90.  NXP has and continues to indirectly infringe the '916 Patent by inducing others to infringe one or more claims of the '916 Patent through making, using, selling, offering for sale, distributing, and/or importing the Accused Products. For instance, NXP supports and encourages customers to attach other Accused Products than the Accused Modem Products to modems to achieve the claimed inventions of the '916 patent. Moreover, NXP induces its distributors and customers to directly infringe the '916 Patent by using, selling, offering for sale, or importing in or into the United States the Accused Modem Products,

---

[54] *Id*. See also, ARM, *Arm Architecture Reference Manual for A-Profile Architecture*, https://developer.arm.com/documentation/ddi0487/latest (last visited Feb, 11, 2026), at D8-7620 – D8-7621.

including the State of Texas and this District. NXP was and has been aware of the '916 Patent and its coverage of Accused Products, no later than service of this Complaint, and was aware that its actions as to importers, distributors, resellers, wholesalers, retailers, and/or end-users of the Accused Products would induce infringement. For example, NXP knowingly and intentionally instructs its customers, distributors, and end-users to infringe at least through user manuals, product documentation, services, and other materials, such as those located on NXP's website. For instance, NXP provides "hardware design guides" (as well as numerous reference manuals, user guides and topical white papers) for several NXP i.MX 8 and 9 processors, to help hardware engineers design, test and implement their own products incorporating the processors. NXP claims that a hardware design guide "provides examples on board layout and design checklists to ensure first-pass success, and solutions to avoid board bring-up problems,"[55] thereby facilitating customers' infringing use of the Accused Products.[56] Furthermore, NXP provides development boards for the Accused Products to ensure customers can test and develop products incorporating the Accused Products in various application settings.[57] Additionally, NXP provides online training modules inciting customers to market and use the Accused Products to solve various needs (e.g.: "Next-Gen Edge AI: Accelerate Power-Efficient Machine Learning with the NXP i.MX 93 Applications Processor Family").[58] By providing instruction and training to customers and end-users on how to use the Accused Products, in order to promote the sales of these products, in a manner that directly or

---

[55] See, e.g., i.MX 93 Hardware Design Guide, p. 2.
[56] See, e.g., i.MX 93 processor hardware design guide and other reference manuals, user guides and white papers available here (last accessed February 19, 2026): https://www.nxp.com/products/processors-and-microcontrollers/arm-processors/i-mx-applications-processors/i-mx-9-processors/i-mx-93-applications-processor-family-arm-cortex-a55-ml-acceleration-power-efficient-mpu:i.MX93.
[57] See, e.g., https://www.nxp.com/design/design-center/development-boards-and-designs/FRDM-IMX93. ("The FRDM i.MX 93 development board is a low-cost and compact development board featuring the i.MX93 applications processor […] the board is ideal for developing modern Industrial and IoT applications.")
[58] See, e.g., https://www.nxp.com/design/design-center/training/TIP-NEXT-GEN-AI-MACHINE-LEARNING-WITH-IMX93

indirectly infringes one or more claims of the '916 Patent, including at least indirectly infringing claim 1, NXP specifically intended to induce infringement of the '916 Patent.

91.  NXP's direct and indirect infringement of the '916 Patent has caused, and will continue to cause, substantial damage to UNMRI. UNMRI is, therefore, entitled to an award of damages adequate to compensate for NXP's infringement of the '916 Patent, but in no event less than a reasonable royalty for NXP's use, importation and/or sale of the Accused Products, together with pre- and post-judgment interest, attorneys' fees, and costs as fixed by the Court under 35 U.S.C. §§ 284 and 285.

## VIII.    INFRINGEMENT OF THE '244 PATENT

92.  Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

93.  NXP has and continues to directly infringe this patent (literally and/or under the doctrine of equivalents) by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims (including, but not limited to, claim 1) of the '244 Patent in violation of 35 U.S.C. § 271(a), including the Accused Products. NXP indirectly infringes (by inducement since at least the service of this Complaint) infringe one or more claims of the '244 Patent in violation of 35 U.S.C. § 271, including, but not limited to, claim 1. Claim 1 reads as follows:

> A processor, comprising:
>
> a plurality of cores, one or more of the plurality of cores including execution resources to execute instructions;
>
> an instruction address translation circuit coupled to the one or more of the plurality of cores to perform address translations for instructions, the instruction address translation circuit to translate virtual addresses to physical addresses of memory pages containing the instructions;
>
> a data address translation circuit coupled to the one or more of the plurality of cores to perform address translations for data, the data address translation circuit to translate virtual addresses to physical addresses of memory pages containing the data; and

one or both of the instruction address translation circuit and the data address translation circuit storing a plurality of entries, one or more of the entries to contain at least one virtual to physical address translation, the plurality of entries including a first plurality of entries and a second plurality of entries, the second plurality of entries corresponding to memory pages having different sizes than memory pages corresponding to the first plurality of entries,

one or more of the cores to set one or more bits in the plurality of entries to identify a page size associated with a memory page, the one or more bits to distinguish between 4 Kbyte pages, 64 Kbyte pages, and 4 Mbyte pages, wherein a plurality of sequential 4 Kbyte pages having corresponding consecutive entries from the plurality of entries are to be combined into and treated as the 64 Kbyte pages or the 4 Mbyte pages;

wherein an entry is to further include:

a cacheable indication to identify whether a memory page associated with the entry is cacheable; and

one or more supervisor/user indications to identify types of execution modes in which the memory page may be read and written.

94.   The Accused Products include a "processor comprising: a plurality of cores, one or more of the plurality of cores including execution resources to execute instructions." For instance,

95.   The Accused Products feature "an instruction address translation circuit coupled to the one or more of the plurality of cores to perform address translations for instructions, the instruction address translation circuit to translate virtual addresses to physical addresses of memory pages containing the instructions, " and "a data address translation circuit coupled to the one or more of the plurality of cores to perform address translations for data, the data address translation circuit to translate virtual addresses to physical addresses of memory pages containing the data." The Accused Products include processors that incorporate MMUs to perform Address Translation, as documented by Arm, for example with respect to processors implementing the Armv8-A architecture: "Armv8-A uses a Virtual Memory system where the addresses used by code (virtual addresses) are translated into physical addresses which are used by

the memory system. This translation is performed by a part of the processor that is called a Memory Management Unit (MMU)."[59]



## The Memory Management Unit

An important function of a Memory Management Unit (MMU) is to enable you to manage tasks as independent programs running in their own private virtual memory space. A key feature of such a virtual memory system is address relocation, or the translation of the virtual address issued by the processor to a physical address in main memory.

The ARM MMU is responsible for translating addresses of code and data from the virtual view of memory to the physical addresses in the real system. The translation is carried out by the MMU hardware and is transparent to the application. In addition, the MMU controls such things as memory access permissions, memory ordering and cache policies for each region of memory.

[60]

96.    The processors within the Accused Products implement "one or both of the instruction address translation circuit and the data address translation circuit storing a plurality of entries, one or more of the entries to contain at least one virtual to physical address translation, the plurality of entries including a first plurality of entries and a second plurality of entries, the second plurality of entries corresponding to memory pages having different sizes than memory pages corresponding to the first plurality of entries." For example, the MMUs implement numerous entries containing virtual to physical address translations, including entries corresponding to memory pages of different sizes, such as those identified as "granules" in sizes such as 4 KB, 16 KB and 64 KB.

---

[59] See, e.g., ARM, *Armv8-A Address Translation Version 1.1,* at 4 (July 3, 2019), https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5 (last visited Feb. 19, 2026).
[60] See, e.g., ARM, *ARM Cortex-A Series (Armv7-A) Programmer's Guide*, The *Memory Management Unit*,    https://developer.arm.com/documentation/den0013/0400/The-Memory-Management-Unit    (last visited Feb. 19, 2026).

> AArch64 supports three different translation granules. These define the block size at the lowest level of translation table and control the size of translation tables in use. Larger granule sizes reduce the number of levels of translation table required and this can become an important consideration in systems using a hypervisor to provide virtualization.
>
> The supported granule sizes are 4KB, 16KB, and 64KB, and it is IMPLEMENTATION DEFINED which of the three are supported. Code that creates translation tables is able to read the Memory Model Feature Register 0 system register (ID_AA64MMFR0_EL1), to find out which are the supported sizes. The size is configurable for each translation table within the Translation Control Register (TCR_EL1).

61

97. The Accused Products feature "one or more of the cores to set one or more bits in the plurality of entries to identify a page size associated with a memory page, the one or more bits to distinguish between 4 Kbyte pages, 64 Kbyte pages, and 4 Mbyte pages, wherein a plurality of sequential 4 Kbyte pages having corresponding consecutive entries from the plurality of entries are to be combined into and treated as the 64 Kbyte pages or the 4 Mbyte pages." For example, Armv8-A architecture "provides a feature known as contiguous block entries" to treat several pages as a single pages denoted by block.

> The TLB can hold a fixed number of entries. You can achieve best performance by minimizing the number of external memory accesses caused by translation table traversal and obtaining a high TLB hit rate. The Armv8-A architecture provides a feature known as contiguous block entries to efficiently use TLB space. Translation table block entries each contain a contiguous bit. When set, this bit signals to the TLB that it can cache a single entry covering translations for multiple blocks. A lookup can index anywhere into an address range covered by a contiguous block. The TLB can therefore cache one entry for a defined range of addresses, making it possible to store a larger range of virtual addresses within the TLB than is otherwise possible.
>
> To use a contiguous bit, the contiguous blocks must be adjacent, that is they must correspond to a contiguous range of virtual addresses. They must start on an aligned boundary, have consistent attributes, and point to a contiguous output address range at the same level of translation. The

---

[61] See, e.g., ARM, *Armv8-A Address Translation Version 1.1,* at 13 (July 3, 2019), https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5 (last visited Feb. 19, 2026).

> required alignment is that VA[20:16] for a 4KB granule or VA[28:21] for a 64KB granule, are the
> same for all addresses. The following numbers of contiguous blocks are required:
>
> - 16 × 4KB adjacent blocks giving a 64KB entry with 4KB granule.
>
> - 32 ×32MB adjacent blocks giving a 1GB entry for L2 descriptors.
>
> - 128 ×16KB giving a 2MB entry for L3 descriptors when using a 16KB granule.
>
> - 32 ×64Kb adjacent blocks giving a 2MB entry with a 64KB granule.
>
> If these conditions are not met, a programming error occurs, which can cause TLB aborts or
> corrupted lookups. Possible examples of such an error include:
>
> - One or more of the table entries do not have the contiguous bit set.
>
> - The output of one of the entries points outside the aligned range.
>
> With the Armv8-A architecture, incorrect use does not allow permissions checks outside of EL0
> and EL1 valid address space to be escaped, or to erroneously provide access to EL3 space.
>
> [62]

98.  Furthermore, the Accused Products implement memory address translation entries "wherein an entry is to further include: a cacheable indication to identify whether a memory page associated with the entry is cacheable; and one or more supervisor/user indications to identify types of execution modes in which the memory page may be read and written." For example, Arm identifies that MMU translation tables "define the cache policy for each block" as "Cacheable or Non-cacheable".[63] As a further example, translation table entries define access permissions controlling whether a page may be read or written.

---

[62] *Id*. at 29.
[63] See, e.g., ARM, *Armv8-A Address Translation Version 1.1*, at 16 (July 3, 2019), https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5.





99.  NXP has and continues to indirectly infringe the '244 Patent by inducing others to infringe one or more claims of the '244 Patent through making, using, selling, offering for sale, distributing, and/or importing the Accused Products. For example, NXP induces its distributors and customers to directly infringe the '244 Patent by using, selling, offering for sale, or importing in or into the United States the

---

Accused Products, including the State of Texas and this District. NXP was and has been aware of the '244 Patent and its coverage of Accused Products, no later than service of this Complaint, and was aware that its actions as to importers, distributors, resellers, wholesalers, retailers, and/or end-users of the Accused Products would induce infringement. For example, NXP knowingly and intentionally instructs its customers, distributors, and end-users to infringe at least through user manuals, product documentation, services, and other materials, such as those located on NXP's website. For instance, NXP provides "hardware design guides" (as well as numerous reference manuals, user guides and topical white papers) for several NXP i.MX 8 and 9 processors, to help hardware engineers design, test and implement their own products incorporating the processors. NXP claims that a hardware design guide "provides examples on board layout and design checklists to ensure first-pass success, and solutions to avoid board bring-up problems," [66] thereby facilitating customers' infringing use of the Accused Products. [67] Furthermore, NXP provides development boards for the Accused Products to ensure customers can test and develop products incorporating the Accused Products in various application settings.[68] Additionally, NXP provides online training modules inciting customers to market and use the Accused Products to solve various needs (e.g.: "Next-Gen Edge AI: Accelerate Power-Efficient Machine Learning with the NXP i.MX 93 Applications Processor Family").[69] By providing instruction and training to customers and end-users on how to use the Accused Products, in order to promote the sales of these products, in a manner

---

[66] See, e.g., i.MX 93 Hardware Design Guide, p. 2.

[67] See, e.g., i.MX 93 processor hardware design guide and other reference manuals, user guides and white papers available here (last accessed February 19, 2026): https://www.nxp.com/products/processors-and-microcontrollers/arm-processors/i-mx-applications-processors/i-mx-9-processors/i-mx-93-applications-processor-family-arm-cortex-a55-ml-acceleration-power-efficient-mpu:i.MX93.

[68] See, e.g., https://www.nxp.com/design/design-center/development-boards-and-designs/FRDM-IMX93. ("The FRDM i.MX 93 development board is a low-cost and compact development board featuring the i.MX93 applications processor […] the board is ideal for developing modern Industrial and IoT applications.")

[69] https://www.nxp.com/design/design-center/training/TIP-NEXT-GEN-AI-MACHINE-LEARNING-WITH-IMX93.

that directly infringes one or more claims of the '244 Patent, including at least claim 1, NXP specifically intended to induce infringement of the '244 Patent.

100. NXP's direct and indirect infringement of the '244 Patent has caused, and will continue to cause, substantial damage to UNMRI. UNMRI is, therefore, entitled to an award of damages adequate to compensate for NXP's infringement of the '244 Patent, but in no event less than a reasonable royalty for NXP's use, importation and/or sale of the Accused Products, together with pre- and post-judgment interest, attorneys' fees, and costs as fixed by the Court under 35 U.S.C. §§ 284 and 285.

## IX.    INFRINGEMENT OF THE '191 PATENT

101. Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

102. NXP has and continues to directly infringe this patent (literally and/or under the doctrine of equivalents) by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims (including, but not limited to, claim 1) of the '191 Patent in violation of 35 U.S.C. § 271(a), including the Accused Products. NXP indirectly infringes (by inducement since at least the service of this Complaint) infringe one or more claims of the '191 Patent in violation of 35 U.S.C. § 271, including, but not limited to, claim 1. Claim 1 reads as follows:

A processor comprising:

a plurality of registers to store data;

a plurality caches at different cache levels;

virtualization hardware logic to implement a virtualization environment comprising a host and one or more guests;

memory address translation circuitry to translate guest virtual addresses to guest physical addresses through use of a first set of page tables and to translate the guest physical addresses to host physical addresses through use of a second set of page tables; and

a translation lookaside buffer (TLB) to cache address translation entries associated with address translation operations, at least one address translation entry to include an address from the first set of page tables and at least one address translation entry to include an address from the second set of page tables, a first address translation entry to store page attributes including:

a present bit (P) to indicate whether a page associated with the first address translation entry is present in memory;

a read/write bit (R/W bit) to indicate whether the page is read-only or if read/write access is possible;

a user/supervisor bit (U/S bit) to indicate a protection level for the page;

an access bit (A bit) to indicate whether the page has been accessed;

a dirty bit (D bit) to indicate whether the page has been modified;

a global flag (G bit) to indicate whether the page is used globally; and an execute disable bit (EXB bit) to indicate that code stored in the page cannot be executed,

wherein the processor is to execute a first instruction of an instruction set of the processor, which is a privileged instruction, to access the first address translation entry in the TLB without accessing data of the page in memory or in the plurality of caches during the execution of the first instruction, even when a physical address for the data is stored in the first address translation entry in the TLB, wherein the processor is to access the first address translation entry including the physical address and at least one of the page attributes, and wherein the processor as part of the execution of the first instruction is to modify the first address translation entry.

103.  NXP has and continues to directly infringe the '191 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims of the '191 Patent in violation of 35 U.S.C. § 271(a), including but not limited to the Accused Products. To the extent the preamble is limiting, the Accused Products include a "processor" as recited in the claim (see above section II). Each processor comprises a "plurality of registers to store data" as well as a "plurality of caches at different cache levels" (for instance, NXP describes its application processors as featuring "multiple levels of cache").[70]

---

[70] See, e.g., NXP, *IMX93AEC, i.MX 93 Applications Processors Data Sheet for Automotive Products, Rev. 6.1*, at 2 (July 7, 2025), https://www.nxp.com/docs/en/data-sheet/IMX93AEC.pdf; ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile*, at A1.3.1, B2.3, https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026).



104. The Accused Products comprise "virtualization hardware logic to implement a virtualization environment comprising a host and one or more guests." For instance, ARM architectures implemented in the Accused Products feature a "virtualization" environment comprising a host ("hypervisor") and "a number of Guest operating systems."[71]

105. The Accused Products include "memory address translation circuitry to translate guest virtual addresses to guest physical addresses through use of a first set of page tables and to translate the guest physical addresses to host physical addresses through use of a second set of page tables." For instance, the Accused Products implement a "[v]irtual Memory system" to translate (guest) "virtual addresses" to (guest) "physical addresses" through use of "translation tables stored in memory to translate [guest] virtual

---

[71] See, e.g., ARM, *Arm Architecture Reference Manual for A-Profile Architecture*, https://developer.arm.com/documentation/ddi0487/latest (last visited Feb, 11, 2026), at G1-13269; ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile* https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026), at D1.5.

addresses to [host] physical addresses."[72] The Accused Products comprise "a translation lookaside buffer (TLB) to cache address translation entries associated with address translation operations, at least one address translation entry to include an address from the first set of page tables and at least one address translation entry to include an address from the second set of page tables." For example, the Accused Products include TLBs whose entries cache translation results and associated attribute information.[73]

106. The Accused Products comprise "a first address translation entry to store page attributes including" the bits recited in the claim. Such attributes include a "present bit" to indicate whether a page associated with the first address translation entry is present in memory (e.g., "valid" and not "unmapped")"[74] a "read/write bit" to indicate whether the page is "read-only" or if "read"/"write" "access" is possible;[75] a "user/supervisor bit" to indicate a protection level for the page;[76] an "access bit, such as an "access flag," which "indicates when a block entry is used," and records a "dirty state" for modifications;[77]

---

[72] See, e.g., ARM, *Armv8-A Address Translation Version 1.1*, at 4 (July 3, 2019), https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5.
[73] See, e.g., ARM, *Armv8-A Address Translation Version 1.1*, at 27 (July 3, 2019), https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5; ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile*, https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026), at D5.7.1; ARM, *Arm Architecture Reference Manual for A-Profile Architecture*, https://developer.arm.com/documentation/ddi0487/latest (last visited Feb. 19, 2026), at G5-13535.
[74] See, e.g., ARM, *ARM Architecture Reference Manual ARMv8, for ARMv8-A architecture profile*, https://yurichev.com/mirrors/ARMv8-A_Architecture_Reference_Manual_(Issue_A.a).pdf (last visited Feb. 19, 2026), at D5-1775. ARM, *Arm Architecture Reference Manual for A-Profile Architecture*, https://developer.arm.com/documentation/ddi0487/latest (last visited Feb. 19, 2026), at G5-13495.
[75] See, e.g., ARM, *Armv8-A Address Translation Version 1.1*, at 22 (July 3, 2019), https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5; ARM, *ARM Cortex -A Series Version: 1.0 Programmer's Guide for ARMv8-A*, https://cs140e.sergio.bz/docs/ARMv8-A-Programmer-Guide.pdf (last visited Feb. 19, 2026), at 13-11.
[76] *Id*.
[77] See, e.g., ARM, *ARM Cortex -A Series Version: 1.0 Programmer's Guide for ARMv8-A*, at 11.2, 12.8, 13-11 https://cs140e.sergio.bz/docs/ARMv8-A-Programmer-Guide.pdf (last visited Feb. 19, 2026).

a "global flag" (e.g., "non-global bit") to indicate whether a page is used globally or not;[78] and an execute disable bit (e.g., "execute never bits") to indicate that code stored in the page cannot be executed.[79]

107. The Accused Products include a processor "to execute a first instruction of an instruction set of the processor, which is a privileged instruction, to access the first address translation entry in the TLB without accessing data of the page in memory or in the plurality of caches during the execution of the first instruction, even when a physical address for the data is stored in the first address translation entry in the TLB, wherein the processor is to access the first address translation entry including the physical address and at least one of the page attributes, and wherein the processor as part of the execution of the first instruction is to modify the first address translation entry." For example, they feature processors that execute privileged TLB entry instructions while only "accessing data allocated to it, and not the resources that are allocated" elsewhere,[80] to "combine […] the attributes [including "the physical address space"] from the two [translation] stages to give a final effective value," modifying the first address translation entry.[81]

108. NXP has and continues to indirectly infringe the '191 Patent by inducing others to infringe one or more claims of the '191 Patent through making, using, selling, offering for sale, distributing, and/or importing the Accused Products. For example, NXP induces its distributors and customers to directly

---

[78] See, e.g., ARM, *Armv8-A Address Translation Version 1.1*, at 30 (July 3, 2019), https://documentation-service.arm.com/static/5efa1d23dbdee951c1ccdec5.

[79] See, e.g., ARM, *ARM Cortex -A Series Version: 1.0 Programmer's Guide for ARMv8-A*, at 13.3, https://cs140e.sergio.bz/docs/ARMv8-A-Programmer-Guide.pdf (last visited Feb. 19, 2026).

[80] See, e.g., ARM, *Learn the architecture - AArch64 virtualization Guide*, Stage 2 translation, https://developer.arm.com/documentation/102142/0100/Stage-2-translation (last visited Feb. 19, 2026); ARM, *Armv8-A memory model Version 1.0*, at 4, https://developer.arm.com/-/media/Arm%20Developer%20Community/PDF/Learn%20the%20Architecture/Armv8-A%20memory%20model%20guide.pdf?revision=58b1dd0a-3800-4218-b21a-f95a0332034c (last visited Jan. 21, 2026).

[81] See, e.g., ARM, *Learn the architecture - AArch64 virtualization Guide*, Stage 2 translation, https://developer.arm.com/documentation/102142/0100/Stage-2-translation (last visited Feb. 19, 2026).

infringe the '191 Patent by using, selling, offering for sale, or importing in or into the United States the Accused Products, including into the State of Texas and this District. NXP was and has been aware of the '191 Patent and its coverage of its Accused Products no later than service of this Complaint, and was aware that its actions as to importers, distributors, resellers, wholesalers, retailers, and/or end-users of the Accused Products would induce infringement. For example, NXP knowingly and intentionally instructs its customers, distributors, and end-users to infringe at least through user manuals, product documentation, services, and other materials, such as those located on NXP's website. For instance, NXP provides "hardware design guides" (as well as numerous reference manuals, user guides and topical white papers) for several NXP i.MX 8 and 9 processors, to help hardware engineers design, test and implement their own products incorporating the processors. NXP claims that a hardware design guide "provides examples on board layout and design checklists to ensure first-pass success, and solutions to avoid board bring-up problems,"[82] thereby facilitating customers' infringing use of the Accused Products.[83] Furthermore, NXP provides development boards for the Accused Products to ensure customers can test and develop products incorporating the Accused Products in various application settings.[84] Additionally, NXP provides online training modules inciting customers to market and use the Accused Products to solve various needs (e.g.: "Next-Gen Edge AI: Accelerate Power-Efficient Machine Learning with the NXP i.MX 93 Applications Processor Family").[85] By providing instruction and training to customers and end-users on how to use the

---

[82] See, e.g., NXP i.MX 93 Hardware Design Guide, p. 2.

[83] See, e.g., i.MX 93 processor hardware design guide and other reference manuals, user guides and white papers available here (last accessed February 19, 2026): https://www.nxp.com/products/processors-and-microcontrollers/arm-processors/i-mx-applications-processors/i-mx-9-processors/i-mx-93-applications-processor-family-arm-cortex-a55-ml-acceleration-power-efficient-mpu:i.MX93.

[84] See, e.g., https://www.nxp.com/design/design-center/development-boards-and-designs/FRDM-IMX93. ("The FRDM i.MX 93 development board is a low-cost and compact development board featuring the i.MX93 applications processor […] the board is ideal for developing modern Industrial and IoT applications.")

[85] See, e.g., https://www.nxp.com/design/design-center/training/TIP-NEXT-GEN-AI-MACHINE-LEARNING-WITH-IMX93.

Accused Products, in order to promote the sales of these products, in a manner that directly infringes one or more claims of the '191 Patent, including at least claim 1, NXP specifically intended to induce infringement of the '191 Patent.

109. NXP's direct and indirect infringement of the '191 Patent has caused, and will continue to cause, substantial damage to UNMRI. UNMRI is, therefore, entitled to an award of damages adequate to compensate for NXP's infringement of the '191 Patent, but in no event less than a reasonable royalty for NXP's use, importation and/or sale of the Accused Products, together with pre- and post-judgment interest, attorneys' fees, and costs as fixed by the Court under 35 U.S.C. §§ 284 and 285.

## XI. JURY DEMAND

110. Plaintiff hereby demands a trial by jury for all causes of action.

## XII. PRAYER FOR RELIEF

111. Plaintiff requests the following relief:

A. A judgment that Defendants have directly infringed and continue to infringe the Asserted Patents;

B. A judgment that Defendants have induced infringement and continue to induce infringement of the Asserted Patents;

C. A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement through entry of the final judgment with an accounting as needed;

D. A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and Plaintiff is therefore entitled to reasonable attorneys' fees.

E.  A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

F.  A judgment and order awarding a compulsory ongoing royalty; and

G.  Such other and further relief as the Court deems just and equitable.

Dated: February 19, 2026                    Respectfully submitted,

By: /s/    *Mark D. Siegmund*
        Christopher C. Campbell
        Bar No. 36244 VA
        ccampbell@cahill.com
        Britton F. Davis
        Bar No. 43909
        bdavis@cahill.com
        Alfonso Garcia Chan
        TX Bar No. 24012408
        achan@cahill.com
        Raphael Chabaneix
        TX Bar No. 24118352
        rchabaneix@cahill.com
        Halima Shukri Ndai
        TX Bar No. 24105486
        hndai@cahill.com
        **CAHILL GORDON & REINDEL LLP**
        1900 K Street, N.W., Suite 950
        Washington, D.C.
        Telephone: (202) 862-8900

        Jay P. Kesan
        Bar No. 41017
        jay.kesan@kkd-law.com
        **KEY KESAN DALLMANN PLLC**
        1050 Connecticut Avenue, N.W. Suite 500
        Washington, DC 20036
        Telephone: (202) 772-1100

Mark Siegmund
TX Bar No. 24117055
msiegmund@cjsjlaw.com
Shuya "Grace" Yang
TX Bar No. 24144144
gyang@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES P.C.**
7901 Fish Pond Rd, Second Floor,
Waco, TX 76710
Telephone: 254.732.2242
Facsimile: 866.627.3509

William D. Ellerman
TX Bar No. 24007151
wellerman@cjsjlaw.com
Ari Rafilson
TX Bar No. 24060456
arafilson@cjsjlaw.com
Brett Mangrum
TX Bar No. 24065671
Bmangrum@CJSJLAW.com
**CHERRY JOHNSON SIEGMUND JAMES P.C.**
8140 Walnut Hill Ln, Suite 105
Dallas, TX 75231
Telephone: 254.732.2242
Facsimile: 866.627.3509

***Attorneys for Plaintiff***
***UNM Rainforest Innovations***